## HOEPER *v.* TAX COMMISSION OF WISCONSIN ET AL.

No. 17. Submitted October 15, 1931.—Decided November 30, 1931.

*Mr. Claire B. Bird* was on the brief for appellant.

*Messrs. John W. Reynolds,* Attorney General of Wisconsin, and *Harold M. Wilkie* were on the brief for the Tax Commission of Wisconsin, appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Appellant, a resident of Marathon County, Wisconsin, married in the year 1927. Subsequently to his marriage he was in receipt of income taxable to him under the income tax statute of the state. His wife, during the same period, received taxable income, composed of a salary, interest and dividends, and a share of the profits of a partnership with which her husband had no connection. The assessor of incomes assessed against the appellant a tax computed on the combined total of his and his wife's incomes as shown by separate returns, treating the aggregate as his income. The amount so ascertained and assessed exceeded the sum of the taxes which would have been due had their taxable incomes been separately as-

sessed.[1]  The authority for the assessor's procedure is found in the following sections of the act:

Section 71.05 (2) (d): " . . . In computing taxes and the amount of taxes payable by persons residing together as members of a family, the income of the wife and the income of. each child under eighteen years of age shall be added to that of the husband or father, or if he be not living, to that of the head of the family and assessed to him except as hereinafter provided.  The taxes levied shall be payable by such husband or head of the family, but if not paid by him may be enforced against any person whose income is included within the tax computation."

Section 71.09 (4) (c): " Married persons living together as husband and wife may make separate returns or join in a single joint return.  In either case the tax shall be computed on the combined average taxable income.  The exemptions provided for in subsection (2) of section 71.05 shall be allowed but once and divided equally and the amount of tax due shall be paid by each in the proportion that the average income of each bears to the combined average income."

Appellant paid the tax under protest, and after complying with requisite conditions precedent, instituted proceedings to recover so much thereof as was in excess of the tax computed on his own separate income.  He asserted that the statute as applied to him violates the Fourteenth Amendment.  The Supreme Court of Wisconsin overruled this contention and affirmed a judgment for appellees.  The question is whether the state law as interpreted and applied deprives the taxpayer of due process and of

[1] This resulted from the fact that the act provides for surtaxes graduated according to the amount of the taxpayer's net income. While the excess would have been less if returns and assessments had been made under section 71.09 (4) the total would still have been greater than the sum of the husband's and wife's taxes if separately assessed on their individual incomes.

the equal protection of the law. The appellant says that what the state has done is to assess and collect from him a tax based in part upon the income received by his wife, and that such exaction is arbitrary and discriminatory, and consequently violative of the constitutional guaranties.

At common law the wife's property, owned at the date of marriage or in any manner acquired thereafter, is the property of her husband. Her earnings and income are his, he may dispose of them at will, and he is liable for her debts. Were the status of a married woman in Wisconsin that which she had at common law, the statutory attribution of her income to her husband for income tax would, no doubt, be justifiable. But her spouse's ownership and control of her property have been abolished by the laws of the state. Women are declared to have the same rights as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects.[2] Under the title "Property Rights of Married Women" it is enacted that a wife's real estate and its rents, issues and profits shall be her sole and separate property as if she were unmarried, and shall not be subject to the disposal of her husband;[3] and this is true of her personal property as well, whether owned at the date of marriage or subsequently acquired.[4] She may convey, devise or bequeath her property, real and personal, as if she were unmarried, and her husband has no right of disposal thereof, nor is it liable for his debts.[5] Either spouse may convey his or her property to the other or create a lien thereon in favor of the other.[6] The individual earnings

---

[2] Wis. Stats. 1929, § 6.015 (1).

[3] *Ibid.* § 246.01.

[4] Wis. Stats. 1929, § 246.02.

[5] *Ibid.* § 246.03.

[6] *Ibid.* § 246.03.

of every married woman, except those accruing from labor performed for her husband, or in his employ or payable by him, are her separate property, and are not subject to his control or liable for his debts.[7]   She may sue in her own name and have all the remedies of an unmarried woman in regard to her separate property or business and to recover her earnings, and is liable to suit and to the rendition of a judgment, which may be enforced against her separate property as if she were unmarried.[8]

Since, then, in law and in fact, the wife's income is in the fullest degree her separate property and in no sense that of her husband, the question presented is whether the state has power by an income-tax law to measure his tax, not by his own income but, in part, by that of another. To the problem thus stated, what was said in *Knowlton* v. *Moore,* 178 U. S. 41, 77, is apposite:

" It may be doubted by some, aside from express constitutional restrictions, whether the taxation by Congress of the property of one person, accompanied with an arbitrary provision that the rate of tax shall be fixed with reference to the sum of the property of another, thus bringing about the profound inequality which we have noticed, would not transcend the limitations arising from those fundamental conceptions of free government which underlie all constitutional systems."

We have no doubt that, because of the fundamental conceptions which underlie our system, any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth Amendment.   That which is not in fact the taxpayer's income cannot be made such by calling it income.   Compare *Nichols* v. *Coolidge,* 274 U. S. 531, 540.

---

[7] *Ibid.* § 246.05.

[8] *Ibid.* § 246.07.

It is incorrect to say that the provision of the Wisconsin income tax statute retains or reëstablishes what was formerly an incident of the marriage relation. Wisconsin has not made the property of the wife that of her husband, nor has it made the income from her property the income of her husband. Nor has it established joint ownership. The effort to tax B for A's property or income does not make B the owner of that property or income, and whether the state has power to effect such a change of ownership in a particular case is wholly irrelevant when no such effort has been made. Under the law of Wisconsin the income of the wife does not at any moment or to any extent become the property of the husband. He never has any title to it, or controls any part of it. That income remains hers until the tax is paid, and what is left continues to be hers after that payment. The state merely levies a tax upon it. What Wisconsin has done is to tax as a joint income that which under its law is owned separately and thus to secure a higher tax than would be the sum of the taxes on the separate incomes.

The court below assigned two reasons which it thought removed the constitutional objections to the application of the statute in the instant case. It cited and followed the *Income Tax Cases,* 148 Wis. 456; 134 N. W. 673; 135 N. W. 164, where the statute here in question was sustained on the ground that the provisions under attack are necessary to prevent frauds and evasions of the tax by married persons, and stated that the decision of this Court in *Schlesinger* v. *Wisconsin,* 270 U. S. 230, was not inconsistent with the views expressed by the Supreme Court of Wisconsin in its earlier decision. To this we cannot agree. In the *Schlesinger* case this Court held invalid a statute which, for purposes of inheritance tax, classified all gifts *inter vivos,* effective within six years of death, as gifts made in contemplation of death. To the

argument of the necessity for such classification to prevent frauds and evasions, it was answered [p. 240]:

"That is to say, 'A' may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the State readily to collect lawful charges against 'B.' Rights guaranteed by the federal Constitution are not to be so lightly treated; they are superior to this supposed necessity. The State is forbidden to deny due process of law or the equal protection of the laws for any purpose whatsoever."

The claimed necessity cannot justify the otherwise unconstitutional exaction.

The second reason assigned as a justification for the imposition of the tax is that it is a regulation of marriage. It is said that the marital relation has always been a matter of concern to the state, and has properly been the subject of legislation which classified it as a distinct subject of regulation. It is suggested that a difference of treatment of married as compared with single persons in the amount of tax imposed may be due to the greater and different privileges enjoyed by the former, and, if so, the discrimination would have a reasonable basis, and constitute permissible classification. This view overlooks several important considerations. In the first place, as is pointed out above, the state has, except in its purely social aspects, taken from the marriage status all the elements which differentiate it from that of the single person. In property, business and economic relations they are the same. It can hardly be claimed that a mere difference in social relations so alters the taxable status of one receiving income as to justify a different measure for the tax.

Again, it is clear that the law is a revenue measure, and not one imposing regulatory taxes. It levies a tax on "every person residing within the state" and defines the word "person" as including "natural persons, fiduciaries and corporations," and "corporations" as including "cor-

porations, joint stock companies, associations or common law trusts." It lays graduated taxes on the incomes of natural persons and corporations at different rates. It is comprehensive in its provisions regarding gross income and allowable deductions and exemptions, and is in most respects the analogue of the federal income tax acts in force since 1916. It is obvious that the act does not purport to regulate the status or relationships of any person, natural or artificial. Arbitrary and discriminatory provisions contained in it cannot be justified by calling them special regulations of the persons or relationships which are the object of the discrimination. The present case does not fall within the principle that where the legislature, in prohibiting a traffic or transaction as being against the policy of the state, makes a classification, reasonable in itself, its power so to do is not to be denied simply because some innocent article comes within the proscribed class. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 204. Taxing one person for the property of another is a different matter. There is no room for the suggestion that *qua* the appellant and those similarly situated the act is a reasonable regulation, rather than a tax law.

Neither of the reasons advanced in support of the validity of the statute as applied to the appellant justifies the resulting discrimination. The exaction is arbitrary and is a denial of due process.

The judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Holmes, dissenting.

This is an appeal from a judgment of the Supreme Court of Wisconsin sustaining the constitutionality of a tax levied under the laws of the State. The appellant married a widow. Both parties had separate incomes, and made separate returns. A tax was assessed upon the appellant for the total of both, as if both belonged to

him. By R. S. Wis. § 71.05 (2) (d), " In computing taxes and the amount of taxes payable by persons residing together as members of a family, the income of the wife and the income of each child under eighteen years of age shall be added to that of the husband or father, or if he be not living, to that of the head of the family and assessed to him except as hereinafter provided. The taxes levied shall be payable by such husband or head of the family, but if not paid by him may be enforced against any person whose income is included within the tax computation." By R. S. § 71.09 (4) (c), " Married persons living together as husband and wife may make separate returns or join in a single joint return. In either case the tax shall be computed on the combined average taxable income. The exemptions provided for in subsection (2) of section 71.05 shall be allowed but once and divided equally and the amount of tax due shall be paid by each in the proportion that the average income of each bears to the combined average income." The result of adding the incomes was to increase the rate of the plaintiff's income tax and to charge him with a portion of the tax otherwise payable by Mrs. Hoeper. He sets up the Fourteenth Amendment and says that he has been deprived of due process of law.

This case cannot be disposed of as an attempt to take one person's property to pay another person's debts. The statutes are the outcome of a thousand years of history. They must be viewed against the background of the earlier rules that husband and wife are one, and that one the husband; and that as the husband took the wife's chattels he was liable for her debts. They form a system with echoes of different moments, none of which is entitled to prevail over the other. The emphasis in other sections on separation of interests cannot make us deaf to the assumption, in the sections quoted, of community when two spouses live together and when usually each

would get the benefit of the income of each without inquiry into the source. So far as the Constitution of the United States is concerned, the legislature has power to determine what the consequences of marriage shall be, and as it may provide that the husband shall or shall not have certain rights in his wife's property, and shall or shall not be liable for his wife's debts, it may enact that he shall be liable for taxes on an income that in every probability will make his life easier and help to pay his bills. Taxation may consider not only command over, but actual enjoyment of, the property taxed. See *Corliss* v. *Bowers*, 281 U. S. 376, 378. In some States, if not in all, the husband became the owner of the wife's chattels, on marriage, without any trouble from the Constitution; and it would require ingenious argument to show that there might not be a return to the law as it was in 1800. It is all a matter of statute. But for statute, the income taxed would belong to the husband, and there would be no question about it.

I will add a few words that seem to me superfluous. It is said that Wisconsin has taken away the former characteristics of the marriage state. But it has said in so many words that it keeps this one. And when the legislature clearly indicates that it means to accomplish a certain result within its power to accomplish, it is our business to supply any formula that the *elegantia juris* may seem to require. *Sexton* v. *Kessler & Co.*, 225 U. S. 90, 97.

The statute is justified also by its tendency to prevent tax evasion. No doubt, if, as was held in *Schlesinger* v. *Wisconsin*, 270 U. S. 230, with regard to the measure then before the Court, there was no reasonable relation between the law and the evil, the statute could not be upheld. But the fact that it might reach innocent people does not condemn it. It has been decided too often to be open to question, that administrative necessity may justify the inclusion of innocent objects or trans-

actions within a prohibited class. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 201, 204. *Ruppert* v. *Caffey,* 251 U. S. 264, 283. *Hebe Co.* v. *Shaw,* 248 U. S. 297, 303. *Pierce Oil Corp.* v. *Hope,* 248 U. S. 498, 500. *Euclid* v. *Ambler Co.,* 272 U. S. 365, 388, 389. *Tyler* v. *United States,* 281 U. S. 497, 505. *Milliken* v. *United States,* 283 U. S. 15, 20.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in this opinion.